TOLEDO BAR ASSOCIATION *v*. ROYER.

[Cite as *Toledo Bar Assn. v. Royer,* 133 Ohio St.3d 545, 2012-Ohio-5147.]

*Attorneys—Misconduct—Multiple violations concerning trust accounts—Neglect of entrusted legal matters—One-year suspension, stayed on conditions.*

(No. 2012-0672—Submitted October 23, 2012—Decided November 8, 2012.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court No. 11-057.

_____

**Per Curiam.**

{¶ 1} Respondent, George Ronald Royer of Toledo, Ohio, Attorney Registration No. 0031392, was admitted to the practice of law in Ohio in 1966.

{¶ 2} In June 2011, relator, Toledo Bar Association, filed an amended complaint charging Royer with misconduct and violations of the Ohio Code of Professional Responsibility and the Rules of Professional Conduct.[1] A panel of the Board of Commissioners on Grievances and Discipline heard the cause on February 6, 2012, and, based upon the evidence heard and the stipulations of the parties, recommended that the board adopt the facts and rule violations as stipulated and that Royer be suspended from the practice of law for one year, all stayed, and that he serve two years of monitored probation.

{¶ 3} The board adopted the panel's findings of fact, conclusions of law, and recommended sanction, as do we.

_____

1. Relator charged respondent with misconduct under applicable rules for acts occurring before and after February 1, 2007, the effective date of the Rules of Professional Conduct, which supersede the Disciplinary Rules of the Code of Professional Responsibility. Although both the former and current rules are cited for the same acts, the allegations comprise a single continuing ethical violation. *Disciplinary Counsel v. Freeman*, 119 Ohio St.3d 330, 2008-Ohio-3836, 894 N.E.2d 31, ¶ 1, fn. 1.

**Stipulated Facts of Misconduct and Rule Violations**

Celestino Matter

**{¶ 4}** The parties stipulated that on September 24, 2006, Theresa Celestino signed a fee agreement retaining Royer in connection with a medical-malpractice claim and gave him a cashier's check in the amount of $3,000 for his services. Royer did not deposit this check or any subsequent payments made by Celestino into his client trust account prior to earning the fee, in violation of DR 9-102(A) and Prof.Cond.R. 1.15(a) and (c) (requiring a lawyer to hold property of clients in an interest-bearing client trust account, separate from the lawyer's own property, and to deposit into a client trust account legal fees and expenses that have been paid in advance).

**{¶ 5}** Celestino also paid Royer an additional $4,500 for costs associated with pursuing her malpractice claim. Royer failed to maintain records to account for these costs and failed to render an account to his client, in violation of a number of rules governing professional conduct: DR 9-102(B)(3) (requiring a lawyer to maintain complete records of all client property coming into the lawyer's possession and render appropriate accounts to each client) and Prof.Cond.R. 1.15(a)(2) (requiring a lawyer to maintain a record for each client on whose behalf funds are held), 1.15(a)(3) (requiring a lawyer to maintain a record for the lawyer's client trust account, setting forth the name of the account, the date, the amount, and the client affected by each credit and debit and the balance in the account), and 1.15(a)(4) (requiring a lawyer to maintain all bank statements, deposit slips, and canceled checks, if provided by the bank, for each bank account). Royer also lost evidence that was vital to the malpractice claim, in violation of Prof.Cond.R. 1.15(a) (requiring a lawyer to preserve the identity of client funds and property and promptly deliver funds or other property that the client is entitled to receive).

Walters Matter

{¶ 6}  On three occasions, Paul Walters retained Royer to file applications for a patent with the United States Patent and Trademark Office.  On March 18, 1999, Royer filed a provisional application for a patent in the patent office.  Walters instructed Royer to also prepare and file a patent application that would claim priority from the provisional application if filed by March 18, 2000.  Royer failed to timely file the application and did not advise his client of his failure.  He eventually filed the application on November 17, 2000, but because of the delay, Walters was not able to claim priority from the previously filed provisional application.  Royer admitted neglecting a legal matter entrusted to him in violation of DR 6-101(a)(3) (prohibiting neglect of an entrusted legal matter).

{¶ 7}  In September 2001, Walters again retained Royer to prepare and file an application for another invention.  Despite Walters's numerous inquiries between November 14, 2001, and October 10, 2006, Royer did not file the application until August 28, 2008.  He admitted neglecting a legal matter entrusted to him, in violation of DR 6-101(A)(3) and Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client).

{¶ 8}  On August 24, 2006, Royer filed a design patent application for another Walters invention.  A month later, the patent office issued a notice of missing parts, but Royer failed to timely respond to it.  Consequently, on May 21, 2008, the patent office declared the application abandoned.  Royer did not notify Walters about the notice or the abandonment.  Instead, he told Walters on February 25, 2009, that the application "was taken care of."  Royer admitted that he had neglected a legal matter entrusted to him, in violation of DR 6-101(A)(3) and Prof.Cond.R. 1.3.

{¶ 9}  In addition, Royer admitted that he had failed to maintain complete records of all funds and other properties that he received from Walters and had

failed to render an appropriate account to him in violation of DR 9-102(B)(3) and Prof.Cond.R. 1.15(a)(2), (3), and (4).

**Sanction**

**{¶ 10}** In considering an appropriate sanction for this misconduct, the board weighed the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B). The board also considered sanctions imposed in similar cases. *See Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16.

**{¶ 11}** In aggravation, the board concluded that Royer had committed multiple offenses with respect to the Walters matter and that both clients were vulnerable in that they relied upon him to represent their interests and to care for their funds. *See* BCGD Proc.Reg. 10(B)(1)(d) and (h).

**{¶ 12}** In mitigation, the board took into consideration that Royer had no prior disciplinary record during his 46 years of practice and had no dishonest motive and that he had made restitution to his clients. In addition, Royer fully cooperated in the disciplinary process and showed remorse for his conduct. *See* BCGD Proc.Reg. 10(B)(2)(a), (b), (c), and (d).

**{¶ 13}** Under similar circumstances, we imposed a six-month suspension from the practice of law and stayed the suspension on conditions in a case in which the respondent failed to file a divorce complaint for a client and failed to deposit the unearned portion of his legal fees from the client into his trust account. *Cuyahoga Cty. Bar Assn. v. Rutherford*, 112 Ohio St.3d 159, 2006-Ohio-6526, 858 N.E.2d 417. For two other clients, the respondent had either failed to file a bankruptcy petition or filed the petition without the necessary schedules and also failed to deposit the unearned fees into his trust account.

**{¶ 14}** Similarly, we imposed a one-year suspension from the practice of law, with the entire suspension stayed on conditions, for an attorney's failure to act with reasonable diligence and promptness in representing two clients and

failure to promptly deliver the file to a client when her services were terminated. *Akron Bar Assn. v. Holda*, 125 Ohio St.3d 140, 2010-Ohio-1469, 926 N.E.2d 626.

{¶ 15} This is Royer's only disciplinary proceeding in a long career. His ethical violations lack a dishonest motive and appear to be the result of bad time management and recordkeeping. Consequently, we suspend Royer from the practice of law for one year, with the entire suspension stayed on the conditions that he (1) serve a two-year period of monitored probation without further violations of the Ohio Rules of Professional Conduct, (2) retain a certified public accountant within two months of the final disposition of his case to review his bookkeeping procedures with respect to his client trust account, and (3) provide an accountant's report to the bar association within six months of the final disposition showing compliance with Prof.Cond.R. 1.15. If Royer fails to comply with these conditions, the stay will be revoked and he will serve the full one-year suspension. Costs are taxed to Royer.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

_____

Michael A. Bonfiglio, Bar Counsel; MacMillan, Sobanski & Todd, L.L.C., and Richard MacMillan; and Cooper & Walinsky and Bradley F. Hubbell, for relator.

Jack P. Viren Jr., for respondent.

_____